Good morning, Your Honors. May it please the Court, Gene Vorobiev on behalf of Mr. Meredith. In this case, my client was forced to go through his trial without one of the most basic protections that we give criminal defendants, the presumption of innocence. I think that presumption was gone roughly the moment the jury saw him wearing a bright orange jumpsuit. I think it's an error, and he wore that throughout his trial. So everybody concedes that was constitutional error, so the question is whether it was harmless or not. Correct. Yeah. Now, your client conceded guilt on two of the counts, right? I believe so, yes, on drug possession and possession of stolen property. So it's got to be harmless as to those counts. Correct. Okay. So the only thing we're talking about is the burglary. Burglary, right. Right. I mean, can you answer me a practical question? What additional time is he spending in prison due to the burglary charge alone? Assuming it was second versus first, four years, because that was the question. So it makes a difference. Yes, it definitely makes a difference, even if it was just second-degree burglary. Okay. So as the Court mentioned, the issue of the case boils down to whether this was, this error had a substantial injurious effect on the guilty verdict on burglary. And I think there are a number of reasons why the Court should be at least engraved out as to whether or not the error was prejudicial. First of all, I think the sort of the reference to the uniform was definitely not inconspicuous. In the Harris case, which I, you know, I filed the 28-J letter yesterday, and I apologize for a very late filing. It wasn't in 1983. The 1983 case? That's correct, Your Honor. Very, very late. I'm sorry? Very, very late. I apologize, Your Honor. On the facts, correct me if I'm wrong, he was caught, almost seen red-handedly coming out of the victim's previously locked garage. Is that right? That was the testimony from Mr. Walton was that he had seen the garage door swing out and my client and his companion exit. Did your client have any legitimate lawful business in that previously locked garage? I don't believe so. Okay. And then when he was caught, he was in possession of two items belonging to the victim, a pen and a traveler's check. Is that right? I think that's correct, Your Honor. I mean, isn't that pretty clear evidence of? Well. Go ahead. But there was also evidence from, I believe, a technician, that that particular garage door could not swing out in the way that Mr. Walton described, because it's, as I understood the testimony, two double doors held by a single latch. And the latch was still in place. And one of the two portions of the doors was forced open. Was there any evidence that he was not in the garage in the case? Well, there was no direct evidence that he was in. I mean, nobody actually saw him walking in the house. Saw him walking out. Saw him walking out. Well, there was testimony of him walking out. But there was also testimony that it couldn't quite happen the way. What? Sounds like he had multiple defenses. Correct. One of them was that he wasn't he had possession of the items and basically conceded to that in closing. Right. Right. No, there was no defense to that part. All right. Which seems to be very, very connected to the burglary. Correct? I mean, the items were from the burglary. It's evidence against my client that she has a victim's property on him. Yes. Okay. And the other curious defense was that the place wasn't a residence because the victim was in the hospital and not possibly living during those days while he was in the hospital. I guess how does the wearing the jumpsuit affect that defense? Well, I think wearing of the jumpsuit affects every defense that he presents. I mean, the first part of it is... But you're asking for a per se rule, are you not? That anybody who shows up in a red jumpsuit suffers substantial and injurious effect under Brecht? Well, he had... I think the cases require us to go beyond just the wearing of the jumpsuit. Do they not? Well, I think the cases require you to find that the error is prejudicial. If my client had a legitimate defense or if the prosecution's case was not overwhelming, then I think then you would have to find that the jail uniform has a substantial injurious effect on the verdict. But to Judge Merguia's question, one of the... In fact, I think the primary defense was that the house was not inhabited. Right. That's correct, Your Honor. And your client's demeanor, character had nothing to do with that. Either it was inhabited or not. That was a fact question. It was independent of any prejudice that you might see from the jumpsuit. Right? Well, Your Honor, I think the harm from the jumpsuit is that it causes a jury to view my client as a guilty person. And I don't think that is pigeonholed into factual questions or legal questions. See, there you go back again. You're saying that trumps everything else. It seems to me that you're saying that's the end of the case is the orange jumpsuit. Well, pretty much. I mean, if... I've been told you have to see whether there's substantial or injurious effect, which means you have to look at the whole case and determine whether there was damage to his defense or his case simply by wearing the jumpsuit. And if you look at the case and it's overwhelming, let's assume you had it on surveillance cameras, the whole thing. Well, if it's... Yeah, if it was that overwhelming, yes. But we don't have that here. We don't have anything close to that. So basically, you're hanging on one... the garage door worked and two, there's a factual debate about whether or not the house is inhabited because the owner was in the hospital in a terminal illness. Well, Your Honor, first of all, I think actually as the evidence shows, I'm contradicted that he wasn't life-supported the day before the burglary. In fact, I think that is in the State Court's opinion that he was taken off life-support December 26th. Right. I'm just trying to get to the two... Those are the two issues. Right. All right. In fact, I think that the residential, non-residential character of the burglary is a stronger defense. I agree with you, Judge Stroud. The defense on whether it was a burglary occurred at all, obviously, it's a weaker defense. But, you know, I'm not going to stand here and say otherwise. But I think that given the sort of the inherent problem that you have when the jury views somebody was an obvious hallmark of a guilty person, so long as the defense is not completely beyond pale, or so long as you don't have something like a surveillance camera or five witnesses saying, you know, we saw this gentleman walking in the house with property, that I think you have to find that the error had a substantial and injurious effect on the verdict. And I'm not sure that would actually require you to make any kind of a per se rule. You would still have to look at the nature of the defense in every case. But I think sort of the – in the majority of cases, you know, the error of this nature would have to be prejudicial. Luckily, I don't think that happens very often. I don't remember ever seeing another case in my practice where somebody had to go through trial in an orange jumpsuit. Well, there's no question about that. That's a – usually we get the cases that are fleeting and glancing. Right. We rarely get one of this magnitude. On the other hand, it seems to me that at least one of the defenses has nothing to do with the defendant. It's a factual question about whether or not the house was inhabited or not. I mean, I just – I'm struggling to – and maybe you can help me with trying to determine how your client being in an orange jumpsuit would have any bearing on that factual decision. Right. I would also encourage you to look at it from this point. This is a very emotional case. You have a very sympathetic victim. He's an old elderly gentleman, lived in the house for 70 years. You know, his house apparently was burglarized sounds like a day after he died or something close to it. So you take this type of a victim in the case, put it against my client wearing an orange jumpsuit and found in possession of property, which include personal items the victim would not even give to his own son. I think the jury wasn't going to give my client the benefit of any doubt. And I think that orange suit was a constant reminder of the fact that he's guilty. How long was the jury out? Do we know that from the record? You know, I do not recall. I can maybe, if I reserve a minute, I can look that up quickly. I think Judge McGee had a question, too. No, I'm sorry. You can reserve. If I could reserve a minute, then I can look up and give you the answer. Thank you. Thank you. I had a burglary case once where the jury was out 23 seconds. They never even closed the jury door. There was a cheer. They brought him back out. That was the end of it. Fortunately, he wasn't wearing an orange jumpsuit, though, so. Good morning, and may it please this Honorable Court. My name is Lorenda Dallaini, and I'm here on behalf of Respondent Appellee Raul Lopez. As the State and District Court found in this case, the trial court's error in compelling Mr. Meredith to attend trial in his identifiable jail clothing did not have a substantial and injurious effect on the verdict in this case. Had the defendant been sitting in trial wearing a shirt and tie, the outcome of this case would not have been any different for three reasons. The first reason is that the jurors were specifically instructed not to consider Mr. Meredith's custodial status or his clothing throughout the trial, and defense counsel also received assurances from the jurors that they would not hold that against Mr. Meredith. Put that elephant in the room out of your mind. Excuse me? Put that elephant in the room out of your mind. I mean, it's very tough when you get an instruction like that for them to ignore it. I mean, it's do you have a case that says that that cures the constitutional error? I do not have a case site that that would automatically or per se cure the constitutional error. However, there are a number of United States Supreme Court decisions that indicate we presume the jurors follow the trial court's instructions. And in this case, for us to decide otherwise, we would have to assume that the jurors abdicated their responsibilities in its entirety, and that they ignored the trial court's instructions in that regard, and that they did not. Four days, apparently. It was less than three full days, Your Honor. Okay. There was a reference to four. So it's three days? Less than three days, yes. Okay. The trial started on August 16th, but that was motions in limine. The jury selection didn't start until that following Monday on the 20th. They were let go early on the 20th. On the 21st, the prosecution presented their entire case in chief. On the 22nd, they did closing arguments, and then the jurors went out for, I think, three hours deliberating. The whole time, though, he's in his orange jumpsuit, the defendant? Yes, he is in his orange jumpsuit. And when people are referring to identifying this person, apparently they were saying, yes, the person in the orange jumpsuit is the person who burglarized the home or whatever. There were repeated references to that. It's stunning. It's stunning that this would happen. And I think when we have to look to see whether there's a substantial injurious effect, the instructions may only take you so far. So what's the rest? What's your next argument? I mean, because, I mean, the jury could, I guess, process that, but at the same time, they're seeing all these references and seeing this individual in a red jumpsuit. So what are the other two arguments that you said you had? Thank you, Your Honor. The other arguments are based on the very few contested issues of fact in this case and that it did not come down to a credibility contest. When we look at the facts of this case, it actually was very strong evidence of guilt. Mr. Walton saw Mr. Meredith coming out of the garage doors. The issue as to whether both of the garage doors were swinging open or just one, because the bolts and the hatch were still intact on one of the doors, that doesn't mean Mr. Walton didn't see at least one of those doors swing open and Mr. Meredith actually exit the house with property that was stolen from the house.  Plus, his consciousness of guilt by fleeing the scene and then tucking down in the getaway car so that nobody else would see him. When we look at those facts and you compare them with the defense that was presented in this case, it shows that there isn't any harm. Had this been a case where we did have a very sympathetic victim, like a small child or something, and we're asking the jury to compare the defendant to that small child, then it might have an impact, but we just don't have that type of sympathetic victim in this case. I don't think that's a sympathetic victim here. I mean, my heavens. I think it's a pretty sympathetic victim. I do think that there are some things about Mr. Olson that are sympathetic. For example, what? Well, just he had left his house. He was in some sort of skilled nursing facility, and people went into his house and took apparently a substantial amount of property. It's pretty sympathetic. You've burglarized the home of somebody who is no longer capable of taking care of himself on his deathbed. It is, and I don't disagree with that. And taking sentimental items that meant a great deal to him. I don't disagree with that, but when we're looking at the grand scheme of things, this is somebody who was 93 years old, had lived a full life, had children who loved him and still came to take care of him, and had great friends who came and took care of his home while he was in the hospital. Sounds pretty sympathetic. When you're comparing somebody like that who's lived for 93 years, a very full life, it's not as sympathetic as it could be. You mean the jury is going to say, well, he's an old, dead guy, who cares? I mean, come on. The older he is, the more sympathetic he is. Because they're equally vulnerable. The child is vulnerable, and somebody in his condition is vulnerable. I mean, when I read the case, I thought, boy, those are hard facts for a criminal defense lawyer to defend against when you have that sympathetic victim. And that was my reaction. So maybe you feel differently, but it's, I think he's pretty sympathetic. Even if we consider that Mr. Olson is a very sympathetic victim, as Mr. Harned, the defense counsel, had argued in this case, the jury was still instructed by the court not to consider sympathy or bias, and defense counsel made an issue of that in their closing argument as well. Also, the... I mean, just to return, but I mean, that was kind of a high point of the argument for the prosecution, is how sympathetic and how terrible this was for this victim, right? It was. The prosecution certainly indicated we shouldn't consider that it's over until Mr. Olson is actually dead. It's still his home. Yeah. I mean, the difficulty for me in this case is that I just, I don't think I've ever seen a case where the jumpsuit was so prominently displayed all the time, and people were asking questions about identifying the witness there, and saying, well, explaining the reason he's in a jumpsuit is he can't make bail, which, of course, then goes to his motive for burglary. You know, it's a pretty tough case on the constitutional side. Admittedly, you've got a strong case, so it makes it a difficult, somewhat difficult case, at least for me. I agree with Your Honor that this was a problem, and that's why we conceded the error. Mr. Meredith should not have been compelled to attend trial in his jail clothing. But the fact... Did the government speak up at that point and argue that it shouldn't take place? I know the judge ultimately has to make the decision, but did the government say, hey, you know, we'll go find him a shirt and a tie and a jacket? No, the prosecution did not step up. As far as I can read from the record, the prosecution was silent. I think you had a third reason you were going to argue. Well, the third reason I was going to argue was a minor point, and that's that it wasn't referred to as jail clothing the entire time. And I do understand that an orange uniform is going to be prominent. It's a bright orange uniform, and that's how it was referred to. But at the same time as the trial progresses, it wasn't referred to as his prison jumpsuit, his jail jumpsuit, except for the one time. The witness just simply identified him as the gentleman at the table wearing the orange. Do you agree with your opponent's recitation of the practical effect of this? I mean, are we talking about five years on the burglary charge? No, I... I think he has two conceded charges, so I think those are off the table. So what do you think the net effect would be if the burglary charge were endowed in this case? Depending upon the new three strikes law and the application that that would have on this case, I actually think it might be nine years, because the judge gave him the middle term on first degree burglary, which was four years. It would only be two years on a second degree burglary. And then he got a five-year nickel prior based on the prior strike offense for the residential burglary that he had. So it may be nine years. Okay. And I'm not sure... So it makes a difference in this case. Absolutely. It's not like a case of consecutive... Absolutely. Yes. All right. Go ahead, sir. So in conclusion, unless the Court has any additional questions for us, Appelli respectfully requests that this Court find, as the trial court did, that it did not have a substantial and injurious effect on this case. I have two points to make. One, to respond to Judge Trott's question about the lengths of deliberations. Unfortunately, I don't have the specific lengths for you, but I'm going to freely concede that if I didn't mention it in the brief, chances are it wasn't that long. But... The other side said it was three hours during the conversation. Okay. I have no reason to say that's not accurate. Okay.  ordinance, I think it's fair to say that it was three hours. And my other point was about the fact that there was no specific reference that orange prison jumpsuit. The only other profession where I know that somebody wears an orange jumpsuit is a surgical guard. But I don't think the jury saw my client was a surgeon. So... No, he wasn't a surgeon.        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Does the Court have any other questions? No. Thank you both for your arguments. The case will be submitted for decision.  Thank you. Thank you.
judges: Trott, Thomas, Murguia